IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY LENHARDT,<br><br>                  Plaintiff,<br><br>vs.<br><br>SYSCO CORPORATION,<br><br>                  Defendant. | CV 16-153-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Tracy Lenhardt ("Lenhardt") filed this action against Sysco Corporation ("Sysco") challenging the enforceability of a covenant not to compete between the parties, and seeking to recover severance benefits that have been withheld by Sysco.

Pending before the Court is Sysco's Motion to Dismiss Lenhardt's Second Amended Complaint ("complaint") under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to stay the case pending mandatory arbitration. (Doc. 12.) For the following reasons, the Court recommends that Sysco's motion be denied in part and granted in part.

# I.    FACTUAL BACKGROUND

When considering motions to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pled allegations of material fact and construe them in the light most favorable to the nonmoving party.  *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).  The Court also may consider materials attached to the complaint or incorporated by reference, as discussed at greater length below.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly, the Court sets forth the facts as alleged in Lenhardt's complaint, and as derived from certain materials attached to the complaint or incorporated therein by reference.

Following twenty-two years of employment, Sysco notified Lenhardt by letter dated April 7, 2016 ("termination letter"), that her job was to be eliminated as of July 2, 2016.  (Doc. 7 at ¶¶ 2, 3.)  The termination letter provided Lenhardt with a choice of two options going forward.  Lenhardt could either (a) accept a new position at Sysco effective July 3, 2016, or (b) choose to be terminated on July 2, 2016, upon the elimination of her position.  (Doc. 15-1 at 1.)  Option (b) included an offer of certain severance benefits, which was conditioned on Lenhardt executing a "Separation Agreement and General Release" ("Lenhardt Separation Agreement") to be provided at the time of Lenhardt's termination.  (*Id.* at 1-3; Doc. 7 at ¶ 4.)  The termination letter further explained that any severance benefits offered to Lenhardt were conditioned on her "adherence to her ongoing obligations

to [Sysco]," including adherence to a non-compete agreement existing between the parties. (*Id.* at ¶¶ 5, 8.) The termination letter explained that Lenhardt's severance payment "will be made in accordance with the terms of the Sysco Involuntary Severance Plan" ("Sysco Severance Plan").[1] Lenhardt chose option (b), termination and severance benefits. (Doc. 15-1 at 4.)

The Lenhardt Separation Agreement that subsequently was provided to Lenhardt contained a provision that any prior agreements between Lenhardt and Sysco are superseded by the Lenhardt Separation Agreement, with the exception of agreements "related to 'non-competition.'" (*Id.* at ¶ 7.)

Lenhardt attached to her original complaint a document entitled "Sysco Protective Covenants Agreements (RSU Grant)," which contains the relevant non-compete agreement between the parties, and provides[2]:

> 3.4. <u>Restriction on Unfair Competition.</u> Employee agrees that for a period of one year following the end of Employee's employment with Company, Employee will not: accept a job that involves, participate in, provide, supervise, or manage (as an employee, consultant, contractor, officer, owner, director, or otherwise) any activities or services for a

---

[1] The Sysco Severance plan was provided to the Court by Sysco upon filing its Motion to Dismiss (Doc. 14-1) but was not incorporated or otherwise referred to by Lenhardt in her pleadings.

[2] Though Lenhardt's operative Second Amended Complaint contains reference to a document as "Exhibit A," the Court's copy of the complaint (Doc. 7) does not contain any exhibits. Given that the Exhibit A attached to Lenhardt's original complaint (Doc. 5) contains the paragraph Lenhardt reproduces in ¶ 8 of her operative complaint, the Court will assume the original Exhibit A is the document to which Lenhardt refers in her operative complaint.

Competitor that are the same as, or similar in function or purpose to, those Employee performed or participated in during the Look Back Period on behalf of the Company. This restriction is limited to assisting in the business activities of a Competitor within the Restricted Territory. This Paragraph is not intended to prohibit: (i) activities on behalf of an independently operated subsidiary, division, or unit of a diversified corporation or similar business that has common ownership with a Competitor so long as the business of the independently operated business unit does not involve a Conflicting Product or Service; or, (ii) a passive and non-controlling ownership interest in a Competitor through ownership of less than 2% of the stock in a publicly traded company.

(*Id.* at ¶ 8.) The termination letter and the Lenhardt Separation Agreement both refer to and incorporate the above non-compete agreement, and Sysco has indicated that it believes the agreement to be enforceable and expects Lenhardt's compliance therewith. (*Id.*) Lenhardt has requested to be released from the non-compete agreement; Sysco has refused that request. (*Id.* at ¶ 9.)

Lenhardt filed her original complaint in the Montana Thirteenth Judicial District on June 27, 2016, seeking relief from the non-compete agreement as unenforceable under Montana law. (Doc. 5, citing *Wrigg v. Junkermier, et al.*, 265 P.3d 646 (Mont. 2011).) Sysco interpreted Lenhardt's lawsuit as a threat to violate the non-compete agreement, and rescinded Lenhardt's severance package. (Doc. 7 at ¶ 10.)

Lenhardt subsequently filed her second amended complaint (Doc. 7.), and asserts claims for declaratory relief, seeking an adjudication of the respective rights and responsibilities of the parties with respect to the covenant not to compete

(Count I); for injunctive relief, enjoining Sysco from enforcing the covenant and from withholding severance benefits (Count II); and seeking to recover the payment of the withheld severance benefits and other unspecified damages (Count III).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss). It does not necessarily resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Id.* The defendant bears the burden of proving that the plaintiff has failed to state a claim. *Anderson v. Fishback*, 2009 WL 2423327 * 2 (E. D. Cal. 2009).

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679.

Furthermore, a complaint need not refute affirmative defenses. *Jones v. Bock*, 549 U.S. 199, 216-217 (2007); *see also Hollander v. Brown*, 457 F.3d 688, 691, n. 1 (7th Cir. 2006); *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). If the allegations of a complaint itself show that relief is barred by an affirmative

defense, the complaint is subject to dismissal for failure to state a claim, but "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground...." *Jones*, 549 U.S. at 215.

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *Ritchie*, 342 F.3d at 907; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). However, the Court also may consider documents attached to the pleadings, and may consider documents incorporated into the pleadings by reference. *Ritchie*, 342 F.3d at 908. Documents may be incorporated by reference into the pleadings where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

## III. DISCUSSION

### A. Dismissal under Rule 12(b)(6)

#### 1. Parties' Arguments

Sysco asserts several bases for dismissing Lenhardt's complaint. First, and primarily, Sysco argues that the Sysco Severance Plan constitutes an employee benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), and that Lenhardt's state-law claims "relate to" the plan. (Doc. 13 at

7

5-7.)  As such, Sysco argues, Lenhardt's claims are preempted by ERISA and must be dismissed.  (*Id*. at 7-10.)  Next, Sysco argues that Lenhardt's claim should be dismissed because Sysco is not the proper defendant in an ERISA case.  (*Id.* at 10.)  Finally, Sysco argues that Lenhardt failed to exhaust the administrative remedies provided in the Sysco Severance Plan.  (*Id.* at 10-11.)

Lenhardt argues in response that her claims are not preempted by ERISA because the issue of whether the non-compete agreement is enforceable under Montana law is separate and distinct from any claim for denial of benefits under an ERISA plan.  (Doc. 17 at 5.)  Additionally, Lenhardt argues that there is a question of fact as to whether the non-compete agreement was properly incorporated into the separation agreement.  (*Id.* at 4.)  Lenhardt also argues that seeking a declaratory judgment on the enforceability of the non-compete agreement under state law does not trigger any administrative-remedy requirements under the separation agreement.  (*Id*. at 4.)

Sysco replies that Lenhardt fails to refute its ERISA-preemption arguments, and does not meaningfully address its other bases for dismissal.  (*See generally* Doc. 19.)

### 2.    Analysis

Congress enacted ERISA to "protect…the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive

regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions (*see* 29 U.S.C. § 1144), which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523 (1981); *see also Aetna v. Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

The Ninth Circuit Court of Appeals has described ERISA as having "powerful preemptive force." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005). ERISA expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(b)(2)(A). "A state law relates to an ERISA employee benefit plan if it has either 'a connection with' or 'reference to' such a plan." *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 792 (9th Cir. 1996) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc.*, 542 U.S. at 209.

It is clear therefore that ERISA commands wide-ranging preemption of state-law causes of action when the claims relate to ERISA plans; if ERISA is applicable here, it may preempt some or all of the state-law claims Lenhardt has raised in this case. Nevertheless, the Court does not reach the ERISA preemption issue because Sysco has not made a sufficient showing that Lenhardt's individual severance agreement with Sysco qualifies as an ERISA plan.

While there are few formal requirements for the creation of an ERISA plan, two elements must be present: an ERISA plan must (1) invoke an "ongoing administrative program," and must (2) "enable persons to ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id*. at 938-939 (quotations and citations omitted).

"A severance package can constitute an 'employee benefit plan' within the meaning of ERISA." *Winterrowd v. American General Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003). The determination of ERISA's application to a severance package generally focuses on the first requirement: *i.e.*, whether the plan involves an ongoing administrative program. *See e.g., Fort Halifax Packing Company, Inc. v. Coyne*, 482 U.S. 1 (1987).

*Fort Halifax* is the leading Supreme Court decision addressing this issue. In that decision, the Court considered whether a Maine statute requiring employers to provide a one-time severance payment to employees following a plant closing was

preempted by ERISA. The Court determined that it was not, finding that while the statute provided for the payment of benefits, it did not establish an ongoing administrative scheme.

The Court explained that ERISA preemption was intended to provide a "uniform set of administrative procedures governed by a single set of regulations. *Id.* at 11. The Court pointed out that "[t]his concern only arises…with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. *Id.* Therefore, the Court found that "ERISA's pre-emption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit *plans.*'" *Id.* at 8 (emphasis in original). The Court distinguished the mere payment of benefits from a benefit plan, finding that the latter involves an ongoing administrative program. The Court found that the Maine statute in question "neither establishes, nor requires an employer to maintain, an employee benefit *plan.*" *Id.* at 12 (emphasis in original). In short, the one-time, lump-sum severance payment "require[d] no administrative scheme whatsoever." *Id.* "To do little more than write a check hardly constitutes the operation of a benefit plan." *Id.*

In line with *Fort Halifax*, courts have focused on the degree of ongoing administration required under a severance package to determine whether it

constitutes a benefits plan under ERISA. In doing so, some severance packages have been found to qualify as ERISA benefit plans, and some have not.

In *Bogue v. Ampex*, 926 F.2d 1319 (9th Cir. 1992), for example, the Ninth Circuit held that a severance package qualified as an ERISA benefits plan. In *Boque*, certain corporate executives were offered a compensation plan during the sale of the corporation, which included the potential payment of severance benefits. Under the program, the employees were eligible for the benefits if they were not offered substantially equivalent employment from the buyer following the acquisition.

The Ninth Circuit found that the program involved sufficient ongoing administration to qualify as a benefits plan under ERISA because it required an analysis of each employee's termination under certain criteria. *Id.* at 1323. The Court pointed out that the program's administrator "remained obligated to decide whether a complaining employee's job was 'substantially equivalent' to his pre-acquisition job." *Id.* "Although its application was uncertain, its term was short, and the number of its participants was small, the program's administration required a case-by-case, discretionary application of its terms." *Id.*

Conversely, the Ninth Circuit has declined to find sufficient ongoing administration to qualify as an ERISA plan in several other cases involving the payment of severance benefits. In *Delaye v. Agripac, Inc.*, 39 F.3d 235 (9th Cir.

1994), for example, the former president and CEO of the defendant brought suit following his termination based on the denial of severance benefits. Under his employment agreement with the defendant, if he were terminated for cause he was to be paid severance benefits in a fixed amount for twelve to twenty-four months according to a set formula. *Id.* at 236. If he were terminated without cause, he also would be entitled to receive vacation benefits, together with accident, health, life, and disability insurance benefits for a period following his termination. *Id.*

Despite the ongoing periodic payment of benefits, the Ninth Circuit found the severance benefits were akin to the one-time payment in *Fort Halifax*. The court said that "[w]hile payment could continue for as long as two years, there is nothing discretionary about the timing, amount or form of the payment. Sending [the plaintiff], a single employee, a check every month plus continuing to pay his insurance premiums for the time specified in the employment contract does not rise to the level of an ongoing administrative scheme." *Id.* at 237.

In the present case, Sysco insists that Lenhardt's severance package constitutes an ERISA plan. In support of this contention, Sysco relies on the provisions of the Sysco Severance Plan, and argues that the plan requires an ongoing administrative program. Sysco points out that the Sysco Severance Plan "describ[es] the events that could disqualify an individual from receiving benefits pursuant to the Severance Plan, which requires the Severance Plan's administrators

to evaluate the continuous nature of an employee's status." (Doc. 13 at 5-6, citing pp. 5 and 6 of the Severance Plan, Doc. 14-1.)

After careful review of the limited record, however, the Court cannot conclude that Lenhardt's individual severance agreement with Sysco constitutes an ERISA plan, and consequently cannot reach the question of whether Lenhardt's claims may be dismissed due to ERISA preemption. First, the precise terms of the Lenhardt Severance Agreement are unclear from the record. As the Court has explained, it may consider documents attached to the pleadings, and may consider documents incorporated by reference if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *See* § II, *supra*. Under these criteria, the Court certainly may consider Lenhardt's complaint (Doc. 7), and the Sysco Protective Covenants Agreements (RSU Grant), which Lenhardt attached to her original complaint. (Doc. 5 at 5-11.) The Court also may consider the termination letter, given that Lenhardt refers to it in her complaint, it forms the basis of her claims, and no party disputes its authenticity.[3]

_____

[3] The Court assumes that Sysco assents to the termination letter's authenticity because it attached the letter as an exhibit to its motion. The Court assumes Lenhardt assents to its authenticity because she described it accurately in her complaint and because she did not object to its legitimacy in her response. (Doc. 17.)

The Court is not persuaded, however, that it can consider the Sysco Severance Plan, which provides the basis for Sysco's argument on this issue. First, as Sysco admits, Lenhardt's complaint does not actually refer to Sysco's Severance Plan, but rather refers to the severance package which then refers to the Sysco Severance Plan. (*See* Doc. 13 at 3, n. 2.) Sysco cites to *Corinthian Colleges* for the proposition that the Court can consider the Sysco Severance Plan, "[b]ecause Lenhardt refers to the Severance Package which in turn references the Severance Plan…." *Id.*

The Court does not read *Corinthian Colleges* as authorizing the review of such second-order documents, and the Court's independent research did not locate any authority that would resolve the question in Sysco's favor. As cited above, *Corinthian Colleges* authorizes the Court to consider a document if "the complaint refers to the document" and if the other two requirements also are present. *Corinthian Colleges* does not provide that the Court additionally may consider any and all documents referenced by the documents referenced by the complaint. The Court therefore declines to consider the Sysco Severance Plan in the context of the instant 12(b)(6) motion to dismiss. Since the Sysco Severance Plan forms the basis of Sysco's argument that Lenhardt's severance agreement constitutes an ERISA plan, the Court is without sufficient basis to conclude Lenhardt's severance agreement is an ERISA plan and cannot conclude that her claims are preempted.

Moreover, the result would be the same even assuming the Court could consider the Sysco Severance Plan. The termination letter, which the Court can consider, references the Sysco Severance Plan, explaining that the severance payment "will be made in accordance with the terms of [the Sysco Severance Plan]." (Doc. 15-1 at 1.) If the termination letter represented the final agreement between Lenhardt and Sysco – and assuming the Court could consider the Severance Plan – the Court may be able to determine at this point whether Lenhardt's severance agreement created an ERISA plan. But that appears not to be the case. The termination letter states clearly, "[i]n order to be eligible for the Severance Benefits described herein you must timely execute a Separation Agreement and General Release…which will be provided to you at the time you exit the Company." (*Id.*) That section indicates that the termination letter does not represent the final agreement between Lenhardt and Sysco, and indeed that Lenhardt was not eligible for any severance benefits until she executed the later agreement. Presumably, but not assuredly, this later Separation Agreement and General Release is the "Separation Agreement" to which Lenhardt refers in her Complaint. (*See*, e.g., Doc. 7 at ¶¶ 4, 6, 7.)

Neither party has attached this final Lenhardt Separation Agreement as an exhibit. The Court therefore is ignorant of the final terms of Lenhardt's Separation Agreement and what effect that final agreement may have on any earlier

agreements.  Notably, Lenhardt has alleged that the final separation agreement, by its terms, superseded all prior agreements "except any prior agreements related to 'non-competition'."  (Doc. 7 at ¶ 7 (emphasis in original).)  Accepting this allegation as true, and construing it in the light most favorable to Lenhardt, as the Court must at this stage, the final agreement between the parties superseded the termination letter and the Sysco Severance Plan.

In short, the Court does not have all of the information it needs to determine whether the severance agreement between Lenhardt and Sysco constitutes an ERISA plan.  Having all of the parties' relevant agreements properly before the Court is essential for the proper determination of ERISA's application.  Even if the Sysco Severance Plan constitutes an ERISA benefits plan, as Sysco maintains, the final agreement between the parties may constitute a stand-alone agreement which governs the parties' rights and responsibilities, without regard to the Sysco Severance Plan or ERISA.  *See e.g., Eide v. Grey Fox Technical Services Corp.*, 329 F.3d 600, 607 (8th Cir. 2003) and *Patel v. Sugen, Inc.*, 354 F.Supp.2d 1098, 1107 (N.D. Cal. 2005) (severance benefits were not paid pursuant to an existing corporate ERISA severance plan, but under a subsequently executed free-standing non-ERISA contract between the parties).

At the very least, then, the Court requires the terms of the final agreement governing the parties' relationship following Lenhardt's termination.  Dismissing

Lenhardt's complaint without the benefit of at least that agreement would require the Court to assume facts that are not properly before it, and then construe those facts against the nonmoving party, which is contrary to the Court's role when faced with a motion to dismiss under Rule 12(b)(6). Because the Court cannot conclude that Lenhardt's Separation Agreement created an ERISA plan, the Court cannot reach the subsequent conclusion that Lenhardt's claims are preempted by ERISA.

Sysco's remaining Rule 12(b)(6) claims also fail for reasons discussed above. First, Sysco argues that it is not the proper defendant in an ERISA-benefits denial claim under 29 U.S.C. § 1132(d)(1). (Doc. 13 at 10.) As explained, the Court is not yet persuaded that Lenhardt's severance agreement constitutes an ERISA plan, and Lenhardt has not, at this point, raised any claim under 29 U.S.C. § 1132(d)(1).

Next, Sysco argues that Lenhardt failed to exhaust the administrative remedies required by the Sysco Severance Plan. As explained, the Court declines to consider the Sysco Severance Plan at this time, and therefore cannot conclude that Lenhardt has contravened any part of that document.

For the foregoing reasons, the Court recommends that Lenhardt's Rule 12(b)(6) motion to dismiss on the basis of ERISA preemption be denied.

*//*

18

**B.     Stay Pending Arbitration**

**1.     Parties' Arguments**

In the event the Court denies its Rule 12(b)(6) motion to dismiss, Sysco requests alternatively that the Court stay the case to allow the parties to conduct contractually obligated arbitration.  (Docs. 12 at 3-4, 13 at 11.)  Sysco argues that the Sysco Protective Covenants Agreement contains a mandatory arbitration provision that applies to Lenhardt's claims.  Invoking the Federal Arbitration Act ("FAA") at 9 U.S.C. § 1, *et seq.*, Sysco argues that the Court may not entertain Lenhardt's claims, because the parties have not conducted the mandatory arbitration.

Lenhardt responds to this argument in one conclusory sentence, claiming "nothing about this case, including the declaratory relief sought, invokes the [FAA] or otherwise requires arbitration of the issue raised by the declaratory judgment action."  (Doc. 17 at 4-5.)  Lenhardt cites to no authority in support of this argument.

Sysco replies that Lenhardt barely addressed its mandatory arbitration argument, and cites case law for the proposition that failure to respond to a contested argument set forth in an opening brief constitutes waiver or abandonment of the issue.  (Doc. 19 at 8 (citing *Stichting Pensioenfonds ABP v. CountryWide Financial Corp.*, 802 F.Supp.2d 1125, 1132 (C.D. Cal. 2011).)

## 2.     Analysis

The FAA declares a national policy favoring arbitration.  *Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).  It places arbitration agreements on an equal footing with other contracts and requires courts to enforce arbitration agreements according to their terms.  *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  Because arbitration is favored, the party challenging the enforceability of an arbitration agreement "bear(s) the burden of proving that the provision is unenforceable."  *Mortensen v. Bresnan Communications, LLC*, 772 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

The United States Supreme Court has very clearly interpreted the FAA as circumscribing the role of courts in considering challenges to arbitration clauses.  *See AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740, 1748-49 (2011); *Rent-A-Center, West, Inc. v. Jackson,* 130 S.Ct. 2772, 2778 (2010); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989).  The Supreme Court finds that a court is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  For this purpose, "an arbitration provision is

severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). If the arbitration provision is valid, the validity of the remainder of the contract is for the arbitrator to decide. *Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S.Ct. 500, 503 (2012).

Sysco is correct that the Sysco Protective Covenants Agreement contains an arbitration provision. Section 6 of the agreement provides, in pertinent part:

> The parties agree to arbitrate any and all claims arising from this Agreement or the enforcement of it in accordance with the commercial dispute resolution rules of the American Arbitration Association (AAA).... The parties waive their right to jury trial on any legal dispute arising from or relating to this Agreement.

(Doc. 5 at 10-11.)

As indicated above, Lenhardt bears the burden of demonstrating that this agreement is unenforceable. But Lenhardt has made no claim that the arbitration agreement is invalid, or that the present dispute is not covered by the agreement. Therefore, under § 3 of the FAA (9 U.S.C. § 3), the Court is required to "stay the trial of the action until…arbitration has been had in accordance with the terms of the agreement…."

The parties' arbitration agreement clearly encompasses the non-compete provision, and therefore is directly applicable to Counts I and II of the complaint, which counts are aimed squarely at the enforceability of the non-compete agreement. In turn, resolution of the non-compete issue is necessary prior to

consideration of Count III because the non-compete agreement is central to Sysco's decision to withhold Lenhardt's severance benefits. Accordingly, it is appropriate to stay the case in total until such time as the parties arbitrate the issues covered by the arbitration agreement.

## IV. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Sysco's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be DENIED.

IT IS FURTHER RECOMMENDED that Sysco's request to stay the case pending mandatory arbitration be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 9th day of February, 2017.

TIMOTHY J. CAVAN
United States Magistrate Judge