IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



TRACY LENHARDT,

Plaintiff,

vs.

SYSCO CORPORATION,

Defendant.

CV 16-153-BLG-SPW

ORDER

## I. Introduction

Sysco has moved to dismiss Lenhardt's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to stay the case pending mandatory arbitration. (Doc. 12). On February 9, 2017, Magistrate Judge Timothy Cavan issued his Findings and Recommendation recommending that this Court deny Sysco's motion to dismiss but grant Sysco's motion to stay pending arbitration. (Doc. 21).

When a party timely objects to any portion of the magistrate judge's Findings and Recommendations, the district court must conduct a de novo review of the portions of the Findings and Recommendations to which objections are

1

made. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F.2d 1309, 1313 (9th Cir. 1981). The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1). The district court is not required to review the factual and legal conclusions of the magistrate judge to which the parties do not object. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Both parties filed timely objections and responses to Judge Cavan's Findings and Recommendation. (Docs. 23-26). After independently reviewing and considering the filings, this Court adopts Judge Cavan's findings and recommendations in part and modifies them in part, as set out below.

## II. Relevant Background[1]

Lenhardt was employed by Sysco. (Doc. 1-2, ¶2). During her employment, Sysco granted Lenhardt certain long term incentives called restrictive stock units ("RSUs"). (*Id.* at ¶ 8; Doc. 1-1 at 6-12). In consideration for the RSUs, Lenhardt agreed to abide by certain restrictive covenants ("Protective Covenants") during and after her employment with Sysco. (Doc. 1-2 at ¶ 8). The Protective Covenants

---

[1] Because the parties are familiar with the procedural and factual background of this case, it will only be restated as necessary to explain this Court's reasoning.

2

included a non-compete agreement in which Lenhardt agreed, in pertinent part, that:

> for a period of one year following the end of [her] employment with [Sysco], [she] will not: accept a job that involves, participate in, provide, supervise, or manage . . . any activities or services for a [c]ompetitor that are the same as, or similar in function or purpose to those [she] performed or participated in during the [two years prior to the end of her employment with Sysco] on behalf of [Sysco]. This restriction is limited to assisting in the business activities of a [c]ompetitor within the [geographic area where she worked].

(*Id.*; Doc. 1-1 at 22). The Protective Covenants also provide that all disputes related to enforceability are subject to mandatory arbitration. (*Id.*; Doc. 1-1 at 11-12).

On April 7, 2016, Sysco informed Lenhardt by letter ("termination letter") that her job would be eliminated on July 2, 2016. (Doc. 7 at ¶¶ 2, 3; Doc. 15-1). Sysco gave Lenhardt the option of accepting a new position at Sysco effective July 3, 2016, or accepting an involuntary severance benefits package ("Severance Package."). (Doc. 1-2 at ¶¶ 4-5). According to the termination letter, the Severance Package was conditioned on Lenhardt executing a "Separation Agreement and General Release" ("Separation Agreement") at the time of her termination. (Doc. 7 at ¶ 4). Also, according to the letter, the Severance Package was conditioned on Lenhardt's "adherence to her ongoing obligations to [Sysco]," including adherence to the non-compete agreement in the Protective Covenants.

3

(*Id.* at ¶¶ 5-8). Finally, the termination letter explained that Lenhardt's severance payment, included as part of the Severance Package, would "be made in accordance with the terms of the Sysco Involuntary Severance Plan" ("Sysco Plan"). Lenhardt chose the Severance Package. (*Id.* at ¶¶ 14, 16). She did not, however, execute the Separation Agreement. (Doc. 24 at 11).

Lenhardt filed her original complaint in the Montana Thirteenth Judicial District on June 27, 2016, prior to the effective date of her job elimination, seeking adjudication of her rights with respect to, and relief from, the non-compete agreement. (*See* Doc. 5). Sysco interpreted Lenhardt's lawsuit as a threat to violate the non-compete agreement and rescinded Lenhardt's Severance Package. (Doc. 7 at ¶ 10). In response, Lenhardt amended her complaint and requested the Court enjoin Sysco from (1) enforcing or threatening to enforce the non-compete agreement and (2) withholding severance benefits, in addition to adjudicating the parties rights with respect to the non-compete agreement. (*See gen. id.*). She also seeks to recover payment of the withheld severance benefits and damages. (*Id.*).

Sysco removed the action to Federal Court on October 24, 2016. (Doc. 1). Thereafter, Sysco filed the current motion to dismiss Lenhardt's Second Amended Complaint under Rule 12(b)(6), or in the alternative, to stay the case pending mandatory arbitration. (Doc. 12). In his Findings and Recommendations, Judge Cavan determined that because the Second Amended Complaint did not

4

incorporate or otherwise refer by reference to the Sysco Plan, he could not consider it in the motion to dismiss context. (Doc. 21 at 15). Without the Sysco Plan, Judge Cavan ruled that he did not have enough information to determine if ERISA preempted Lenhardt's claims. (*Id.* at 15). Even assuming he could consider the Sysco Plan, Judge Cavan determined that Sysco and Lenhardt's Separation Agreement (which the court also does not have) superseded the Sysco Plan and represented the final say on Lenhardt's benefits. Without the Separation Agreement, Judge Cavan determined the court still lacked the necessary information to decide whether the agreement constituted an ERISA plan, so the court could not conclude that Lenhardt's claims were preempted by ERISA. (*Id.* at 18). On that basis, Judge Cavan recommended denying Sysco's motion to dismiss. (*Id.*).

Next, Judge Cavan addressed Sysco's alternative argument to stay the case pending mandatory arbitration. (*Id.* at 19). Judge Cavan determined that the arbitration clause found in the Protective Covenants encompassed the non-compete agreement Lenhardt placed at issue in the Second Amended Complaint. (*Id.* at 20). Lenhardt did not argue that the arbitration agreement was invalid, nor did she argue that the present dispute was outside the arbitration agreement. (*Id.* at 21). Accordingly, Judge Cavan found that § 3 of the Federal Arbitration Act mandated

that the court stay the action until the parties arbitrated the non-compete agreement, and recommended the same. (*Id.* at 21).

In its objection, Sysco argues that Judge Cavan erred by not considering the Sysco Plan in determining whether ERISA preempted Lenhardt's claims. (Doc. 24 at 6-9). Sysco also argues that neither party executed the Separation Agreement, so it does not supersede the Sysco Plan, and cannot represent the final agreement between the parties. (Doc. 24 at 11). Sysco contends that the Court has all the necessary information before it to determine whether ERISA preempts Lenhardt's claims. (*Id.* at 10-11).

Lenhardt objected to Judge Cavan's decision to stay the case for mandatory arbitration because "there is nothing to arbitrate." (Doc. 23 at 1). Lenhardt does not articulate any particular objection but essentially argues that arbitration is unnecessary for the same reasons she resists the motion to dismiss. (*See gen.* Doc. 23).

## III. Legal Standard

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United*

*States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.; see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

## IV. Discussion

### A. Applicable Law

ERISA is designed to protect employees from losing their pensions and benefits due to employer mismanagement. *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) (citing *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989)). With ERISA, Congress sought to "ensure that plans and plan sponsors would be subject to a uniform body of benefits law," to mitigate "the burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll-Rand Co. v. McLendon*, 498 U.S. 133, 142 (1990).

Severance pay plans or severance agreements may be treated as employee welfare benefit plans under ERISA. *Id.* (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985)). For severance plans to be covered by ERISA, the plans must "implicate an ongoing administrative program to meet the employer's obligation[.]" *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987) (emphasis omitted). In *Fort Halifax*, a Maine statute required employers to provide a one-

7

time severance payment to employees in the event of a plant closing. *Id.* at 3. In finding that ERISA did not preempt the statute, the Supreme Court held that the severance package in that case, a "one-time, lump sum severance payment triggered by a single event," was not an employee benefit plan within the meaning of ERISA because it "require[d] no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12. "To do little more than write a check hardly constitutes the operation of a benefit plan [under ERISA]." *Id.*

Underscoring the difference between employee benefits and employee benefit plans, the Supreme Court recognized that the purpose of ERISA preemption of state law is to create a single set of regulations to govern benefit plans' *ongoing* administrative activities. *Id.* Thus, the test to determine whether a plan is covered by ERISA is whether the benefit package implicates an ongoing administrative scheme. *Id.*

ERISA has a "powerful preemptive force." *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). Two types of ERISA preemption exist: complete and express preemption. *Id.* Complete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court. *Cleghorn*, 408 F.3d at 1225. Section 502(a) of ERISA provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his

8

plan. . . ." 29 U.S.C. § 11132(a)(1)(B). Congress completely preempted this particular area so that any civil complaint raising this select group of claims is necessarily federal in character. *Cleghorn*, 408 F.3d at 1225; *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65 (1987)).

Express preemption exists under section 514(a) of ERISA. "Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." *Id.* ERISA section 514(a) expressly preempts all state laws that "relate to" any employee benefit plan, unless the state laws "regulate insurance, banking or securities." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987); 29 U.S.C. § 1144(b)(2)(A).

### B. Analysis

#### 1. The Sysco Plan

As a threshold issue, the Court must determine whether it may consider the Sysco Plan in ruling on Sysco's motion to dismiss. Generally, in reviewing a motion to dismiss, the court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted); *see also United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir.

9

2011). Information is incorporated into the complaint "where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Ninth Circuit has extended the incorporation by reference doctrine to include "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Here, the Court finds that the Sysco Plan is incorporated by reference into the Second Amended Complaint because Lenhardt's claims depend on the Sysco Plan's contents. Sysco provided Lenhardt with the option of accepting an involuntary severance benefits package. Lenhardt's Second Amended Complaint alleges that Sysco is wrongfully "withholding from [her] the payment of agreed upon severance payments and severance benefits...," discussed in the termination letter. (Doc. 7 at ¶¶ 15-16). In the termination letter, the Severance Package Sysco offered referred to the Sysco Plan. (Doc. 15-1 at 1) ("The Severance Payment will be made in accordance with the terms of the Sysco [] Severance Plan."). As a result, her claim seeking to enjoin Sysco from withholding her benefits is

predicated upon interpretation of the Sysco Plan and whether she has met her ongoing obligations under the Sysco Plan. (Doc. 7 at ¶¶ 4, 7, 9; 14 Doc. 14-1; Doc. 15-1). The Court has to look at the terms of the Sysco Plan to determine whether Lenhardt is entitled to relief.

The other elements under *Knieval* are satisfied as well. Sysco attached the Sysco Plan to its motion to dismiss, (*see* Doc. 14-1), neither party has disputed its authenticity, and as evidenced by the allegations in her Second Amended Complaint, there is no dispute as to the document's relevance. Lenhardt's claims rest upon the Court's interpretation of her Severance Package, which in turn references her membership in the Sysco Plan and the Plan's terms, so the Sysco Plan may be considered in deciding the motion to dismiss. *See Parrino v. FHP, Inc.* 146 F.3d 699, 706 (9th Cir. 1998) (When the complaint makes a reference to a defendant's "group plan" and its "cost containment program[,]," a district court may properly consider ERISA documents in ruling upon a Rule 12(b)(6) motion.)

### 2. The Sysco Plan qualifies as an ERISA plan.

Lenhardt accepted Sysco's severance package offer, which included abiding by the Protective Covenants, and receiving benefit payments distributed per the Sysco Plan. (Doc. 7 at ¶¶ 14, 16, 17; Doc. 15-1). The Sysco Plan is an ERISA plan. It provides that it exists to "resolve any possible claims arising out of any [p]articipant's employment . . . by providing [ ] severance benefits in exchange for

11

a complete [w]aiver and [r]elease of liability." (Doc. 14-1 at 1). It explains how severance benefits are calculated. (*Id.* at 7). It details who is eligible to receive benefits and how an individual may make claims for benefits or appeal adverse decisions. (*Id.* at 9-12). Importantly, an ongoing administrative scheme exists for Sysco to make payments under the Sysco Plan. *Fort Halifax,* 482 U.S. at 11.

The Sysco Plan involves the exercise of significant discretion to determine if an employee's actions threaten to violate the plan. The Plan Administrator determines an employee's eligibility to receive severance payments – including whether the employee continues to comply with the Plan requirements. (*Id.* at 6). Unlike the severance scheme in *Fort Halifax* which was triggered automatically by the occurrence of a single event and involved no more than writing one check, here, for severance benefits to be distributed to Lenhardt, the Plan Administrator must make "ongoing discretionary decisions based on subject criteria." *Fort Halifax,* 482 U.S. at 12. As a consequence, the Court finds the Sysco Plan "by nature requires an ongoing administrative program to meet the employer's obligation" and the Severance Package, which incorporates by reference the Sysco Plan terms, is covered by ERISA.

### 3. Lenhardt's claims may be characterized as ERISA benefits denial claims.

As Judge Cavan noted in his Findings and Recommendations, the precise terms of the Severance Package are unclear from the record. What is clear,

12

however, is that Lenhardt seeks a declaration from the Court that she is not in violation of the Protective Covenant agreement and a declaration that she is entitled to benefits which are administered under an ERISA plan. (*See* Doc. 7).

These claims bear directly on her entitlement to benefits under the Severance Package, and thus are properly characterized as arising under ERISA. 29 U.S.C. § 1132(a)(1)(B) (ERISA provides a civil enforcement mechanism for denial of benefits and clarification of rights under a plan). To the extent Lenhardt seeks to use the Uniform Declaratory Judgment Act under Montana law to obtain benefits under the Severance Package or to declare the covenants unenforceable, her claims are preempted for the same reason. *See Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1227 (9th Cir. 2005) (dismissing state-law causes of action which arise from the defendant's denial of benefits under an ERISA plan).

### 4. The Court cannot determine the motion to dismiss because the Arbitration Agreement is triggered.

Because Lenhardt's claims are properly characterized as arising under ERISA and complete preemption exists, this Court has subject matter jurisdiction. *Cf Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1049 (9th Cir. 1999) (lack of subject matter jurisdiction found where ERISA did not apply and the only other federal statute invoked in petition was the Federal Arbitration Act, which does not provide an independent basis for jurisdiction). As Judge Cavan found, however, a mandatory arbitration provision applies to at least

13

some of Lenhardt's claims. (Doc. 21 at 21). Lenhardt objects to Judge Cavan's finding because "there is nothing to arbitrate." (Doc. 23 at 3). Lenhardt is wrong. In exchange for her RSUs, Lenhardt agreed to arbitrate any claim arising from the Protective Covenants, including the non-compete agreement. (*See* Doc. 7 at ¶¶ 3, 8; Doc. 5 at 10-11). This agreement survived her termination and has a direct impact on the Plan Administrator's determination of her benefits eligibility under the Sysco Plan. Thus, the arbitrator, not the Court, should determine the validity and enforceability of the non-compete agreement.

Because of the arbitration provision, the Court will refrain from deciding the motion to dismiss until after arbitration. *See Local Union No. 370 of Int'l Union of Operating Engineers v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986) (Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator) (internal quotations and citations omitted).

V. **Conclusion**

For the reasons set forth above, IT IS ORDERED that the proposed Findings and Recommendations for disposition of this matter entered by United States Magistrate Judge Cavan (Doc. 21) are ADOPTED IN PART and MODIFIED IN PART.

14

IT IS FURTHER ORDERED that Sysco's request to stay the case pending mandatory arbitration (Doc. 12) is GRANTED. Sysco's Motion to Dismiss (Doc. 12 ) is DENIED without prejudice and with leave to renew following arbitration.

DATED this 28th day of March 2017.

SUSAN P. WATTERS
United States District Judge